IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

KENDRA BOONE-COLEMAN,            )
                                 )
        Plaintiff,               )
                                 )
v.                               )    Civ. Act. No.: 3:18-cv-776-ECM
                                 )              (WO)
SCA, INC., et al.,               )
                                 )
        Defendants.              )

**MEMORANDUM OPINION and ORDER**

**I.        INTRODUCTION**

On September 4, 2018, Kendra Boone-Coleman ("Plaintiff") filed suit against SCA,

Inc. and Yeon Jin Kim ("Defendants") for unlawful discrimination in connection with her

employment. (Doc. 1).  The Plaintiff brings four causes of action against SCA, Inc.: (1)

Title VII national origin discrimination (disparate pay); (2) Title VII national origin

discrimination (disparate terms and conditions of employment); (3) constructive discharge;

and (4) 42 U.S.C. §1981 race discrimination. The Plaintiff also brings claims against her

former supervisor, Yeon Jin Kim, for constructive discharge and race discrimination under

§1981.

The Plaintiff's complaint contains the following factual allegations: in November

of 2014, the Plaintiff, an African American female, began employment with SCA, Inc. as

an "accounting specialist."   Defendant Kim, a Korean male, was SCA, Inc.'s Chief

Financial Officer during a portion of the relevant time period and oversaw their accounting

department.  During her three-year tenure with SCA, Inc., the Plaintiff was the only African

American and non-Korean employee in the accounting department. Moreover, during this time, the Plaintiff asserts that the Defendants treated her less favorably than other Korean, non-African American employees in the terms and conditions of her employment. Specifically, the Plaintiff contends that the Defendants denied her proper training, imposed a heavier workload compared to other employees in the accounting department, and paid her less than similarly situated employees.

With respect to a heavier workload, the Plaintiff asserts that when Won Lee, former assistant accounting manager for SCA, Inc., left the company, some of his duties were shifted to the Plaintiff instead of being shifted to Lee's replacement. Further, the Plaintiff alleges that when her immediate supervisor, Yeong Yun Kwon, went on maternity leave in late 2015, she assumed many of Kwon's responsibilities and continued to perform those responsibilities when Kwon returned from leave.

Regarding pay disparities, the Plaintiff alleges that SCA, Inc. paid other similarly situated Korean, non-black accounting specialists more than her despite the similarly situated employees having less accounting experience than the Plaintiff.[1] Moreover, once the Plaintiff earned her accounting degree after some period of employment with SCA, Inc., she asserts that the company failed to equalize her pay in relation to other coworkers in the accounting department. The Plaintiff contends that on several occasions she informed SCA, Inc. management about her heavier workload and pay disparities.

---

[1] The Plaintiff acknowledges in her complaint that SCA, Inc.'s stated reason for paying her less than other Korean, non-black accounting specialists was due to the fact that the Plaintiff did not have an accounting degree. (Doc. 1 at 16). The Plaintiff admits that she did not have an accounting degree when she began work at SCA, Inc. (*Id*. at 4).

The Plaintiff asserts that she suffered discrimination that was so hostile and abusive that she was constructively discharged in December 2017. Thereafter, the Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC"), and this suit followed.

On October 3, 2018, Defendant SCA, Inc. filed a Partial Motion to Dismiss the Plaintiff's constructive discharge and Title VII race discrimination claims.[2] (Doc. 7). In the alternate, Defendant SCA, Inc. moves for a Motion for a More Definite Statement. (*Id*.). Similarly, on October 9, 2018, Defendant Kim filed a motion to dismiss the Plaintiff's constructive discharge claim. (Doc. 10). Additionally, Defendant Kim moves, pursuant to FED.R.CIV.P. 12(b)(5), to dismiss the Plaintiff's complaint for insufficient service of process. (*Id*.). For the reasons that follow, the Defendants' motions are due to be granted in part and denied in part.

## II.    INSUFFICIENT SERVICE OF PROCESS

Defendant Kim moves to dismiss the Plaintiff's complaint pursuant to Rule 12(b)(5) of the Federal Rules of Civil Procedure. Specifically, Defendant Kim asserts that in May of 2018, he moved to South Korea and did not reside in the United States when the Plaintiff filed this lawsuit. (Doc. 10 at 20).[3] Further, Defendant Kim contends that because he "is a

---

[2] While the Plaintiff does not explicitly allege a Title VII race discrimination claim, she references being treated differently than "non-black" employees. (Doc. 1 at 10-11). Defendant seeks dismissal of this claim to the extent that the Plaintiff attempts to allege race discrimination under Title VII.

[3] The Court observes that Defendant Kim provided this information through the signed declaration of Kristi Martin, a SCA, Inc. employee. Because this case involves insufficient service of process, it is proper for the Court to consider facts and evidence outside of the pleadings to determine jurisdiction. *See Bryant v. Rich*, 530 F.3d 1368, 1376 (11th Cir. 2008) (noting "a judge may make factual findings necessary to resolve motions to dismiss for . . . ineffective service of process.").

resident of South Korea and South Korea is a member of the Hague Convention, [he] must be served in compliance with the Hague Convention or some other method permitted by FED.R.CIV.P 4(f)." (*Id.* at 1-2). According to Defendant Kim, the Plaintiff has failed to "properly serve [him] by utilizing any method for service described in Rule 4(f)." (*Id.* at 4).

The Plaintiff argues that she did properly serve Defendant Kim because "he is still employed with [Defendant SCA, Inc.] and received the complaint from his counsel." (Doc. 15 at 10). Additionally, the Plaintiff appears to argue that she properly served Defendant Kim by mail pursuant to Article 10(a) of the Hague Convention. The Court disagrees.

"Service of process is a jurisdictional requirement: a court lacks jurisdiction over the person of a defendant when that defendant has not been served." *Hemispherx Biopharma, Inc. v. Johannesburg Consol. Investments*, 553 F.3d 1351, 1360 (11th Cir. 2008) (citations omitted). Moreover, "when the defendant contests the sufficiency of service, the plaintiff bears the burden of proving proper service." *Coleman v. Hwashin America Corp.*, 2017 WL 4682053, at *2 (M.D. Ala. 2017).

Rule 4(f) of the Federal Rules of Civil Procedure governs service of process on an individual in a foreign country. In relevant part, the rule provides that a foreign individual may be served "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents" or "by other means not prohibited by international agreement." FED.R.CIV.P. 4(f)(1) and (3). Moreover, "compliance with the [Hague] Convention is mandatory in all cases to which it applies." *Volkswagenwerk*

4

*Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 705 (1988). "Both the United States and South Korea are parties to the Hague Convention." *Backjoy Orthotics, LLC v. Forvic International Inc.*, 2016 WL 7664290, at *4 (M.D. Fla. 2016); *Status Table*, Hague Conference on Private Int'l Law (October 2, 2019), http://www.hcch.net/index_en.php?act=conventions.status&cid=17.

The Hague Convention allows a plaintiff to effect service of process on a foreign individual in several ways. At issue in this case is Article 10(a) of the Convention, which states "*[p]rovided the State of destination does not object*, the present Convention shall not interfere with . . . the freedom to send judicial documents, by postal channels, directly to persons abroad." Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters art. 10, Nov. 15, 1965, 20 U.S.T. 361, T.I.A.S. No. 6638 (emphasis added). The Supreme Court of the United States interpreted this language to mean that Article 10(a) permits service by mail "if two conditions are met: first, the receiving state has not objected to service by mail; and second, service by mail is authorized under otherwise applicable law." *Water Splash, Inc. v. Menon*, 137 S. Ct. 1504, 1513 (2017).

In the instant case, the Plaintiff has failed to carry her burden of proving proper service for two reasons. First, the Plaintiff's contention that Defendant Kim "received the complaint from his counsel" (doc. 15 at 10), does not satisfy the requirements of Rule 4. *See Albra v. Advan, Inc.*, 490 F3d 826, 829 (11th Cir. 2007) (holding "[a] defendant's actual notice is not sufficient to cure defectively executed service."); *Moore v. McCalla Rayer, LLC*, 916 F.Supp.2d 1332, 1340 (N.D. Ga. 2013) (stating "[s]ervice upon counsel

is ineffectual, unless the party has appointed his attorney his agent for service of process."); *Ogidi-Gbegbaje v. J.B. Hunt Transport, Inc.*, 2017 WL 4385329, at *3 (N.D. Ga. 2017) (finding service on defendant's attorney insufficient under Rule 4). Further, the Plaintiff's factual allegations do not establish that Defendant Kim appointed his attorney as his agent for service of process. *See Watkins v. Ramirez*, 2015 WL 5118365, at *3 (S.D. Fla. 2015) (providing "[a] party must have appointed his attorney as his agent for service of process before personal jurisdiction is obtained over the party by service on his attorney.").

Second, with respect to service by mail under Article 10(a) of the Hague Convention, the Plaintiff's argument fails because South Korea expressly objects to "the freedom to send judicial documents, by postal channels, directly to persons abroad." *Declaration/Reservation/Notification*, Hague Conference on Private Int'l Law (October 2, 2019), https://www.hcch.net/en/states/authorities/notifications/?csid=408&disp=resdn. South Korea's express opposition to Article 10(a) makes the Plaintiff's attempt to serve Defendant Kim by mail insufficient. *See Water Splash, Inc.*, 137 S. Ct. at 1503 (holding service by mail under Article 10(a) impermissible if the receiving state objects). Additionally, nothing in the record indicates that the Plaintiff has served or attempted to serve Defendant Kim through other means permitted under the Hague Convention.

Thus, Defendant Kim's South Korean residency (doc. 10 at 20) coupled with the Plaintiff's failure to comply with the applicable provisions of the Hague Convention

illustrates that the Plaintiff has not met her burden of showing proper service.  Accordingly,

Defendant Kim's Motion for Insufficient Service of Process is due to be granted.[4]

### III.    MOTION TO DISMISS

*A.  Standard of Review*

"To survive a motion to dismiss [for failure to state a claim], a complaint must

contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Id.*  "Determining whether a complaint

states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing

court to draw on its judicial experience and common sense." *Id.* at 679.

In analyzing a motion to dismiss for failure to state a claim pursuant to Rule

12(b)(6), the court accepts the factual allegations in the complaint as true, and construes

them in the light most favorable to the plaintiff. *Chaparro v. Carnival Corp.*, 693 F.3d

1333, 1335 (11th Cir. 2012).  However, "if allegations [in the complaint] are indeed more

conclusory than factual, then the court does not have to assume their truth." *Id.* at 1337.

"[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more

than labels and conclusions, and a formulaic recitation of the elements of a cause of action

will not do." *Twombly*, 550 U.S. at 555.

---

[4] The Court does not reach Defendant Kim's substantive argument concerning the Plaintiff's constructive discharge claim because the Court lacks jurisdiction over him.

*B. Discussion*

    i.        Plaintiff fails to state a plausible claim for constructive discharge.

Defendant SCA, Inc. moves to dismiss the Plaintiff's constructive discharge claim. (Doc. 7). Specifically, Defendant SCA, Inc. argues that the Plaintiff's allegations that she received less pay and endured a heavier workload than her peers fail to satisfy the high burden associated with pleading a plausible claim of constructive discharge. (*Id*. at 13). The Court agrees.

"To successfully claim constructive discharge, a plaintiff must demonstrate that working conditions were 'so intolerable that a reasonable person in [her] position would have been compelled to resign.'" *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1231 (11th Cir. 2001) (citations omitted). When analyzing a constructive discharge claim, courts "employ an objective standard" and "do not consider the plaintiff's subjective feelings." *Id*. Moreover, "[t]he threshold for establishing constructive discharge is 'quite high' and requires 'pervasive conduct by [the] employer.'" *Thomas v. Schafer*, 2008 WL 2441040 (M.D. Ala. 2008) (quoting *Hipp*, 252 F.3d at 1231).

In support of her constructive discharge claim, the Plaintiff alleges:

61. Defendants created a work environment so hostile and abusive due to the continual discrimination that Plaintiff suffered depression requiring medical treatment.

62. Eventually, the terms and conditions of her position as an accounting specialist were so discriminatory and her workload so much more than her counterparts that she was forced to resign and was therefore, constructively discharged on or around December, 2017.

(Doc. 1 at 14). Additionally, the Plaintiff contends "the pay disparities . . . the multiple attempts by which she attempted to remedy the situation, the disparities in treatment regarding overtime work and payment, and numerous other details . . ." led to her constructive discharge. (Doc. 15 at 4).

Even accepting the factual allegations as true and construing them in the light most favorable to the Plaintiff, the Court concludes that they fail to plausibly state a claim for constructive discharge. First, the Plaintiff's allegations concerning an increased workload "simply do not rise to the intolerable level at which a reasonable person would feel compelled to resign." *Wardell v. Sch. Bd. of Palm Beach Cty.*, 786 F.2d 1554, 1558 (11th Cir. 1986) (holding that the plaintiff's increased workload and the defendant's failure to promote her, taken together, did not constitute a constructive discharge).

The Plaintiff's claims about pay disparities also fail to satisfy the high burden associated with constructive discharge. *See Durley v. APAC, Inc.*, 236 F.3d 651, 658 (11th Cir. 2000) (holding that the defendant's failure to give the plaintiff a raise comparable to that of other employees, among other things, did not rise to the level of constructive discharge); *see also Freeman v. Koch Foods of Alabama*, 777 F.Supp.2d 1264, 1287 (M.D. Ala. 2011) (finding no constructive discharge when the plaintiff did not experience a pay cut or demotion). In fact, the Plaintiff's allegations show that her pay increased while working for Defendant SCA, Inc. (Doc. 1 at 4).

Taken together, the Plaintiff's assertions amount to nothing more than conclusory allegations insufficient to establish a plausible constructive discharge claim. *Cf. Poole v. Country Club of Columbus, Inc.*, 129 F.3d 551, 553 (11th Cir. 1997) (finding constructive

discharge when defendant employer stripped plaintiff of all job responsibilities, gave her only a chair and no desk, and completely isolated her from other workers). While the Defendants' actions might have frustrated the Plaintiff, they failed to result in a "high degree of deterioration in [her] working conditions, approaching the level of 'intolerable.'" *Hill v. Winn-Dixie Stores, Inc.*, 934 F.2d 1518, 1527 (11th Cir. 1991). Thus, the Court determines that no reasonable juror could conclude, based on the facts presented, that the Plaintiff's working conditions were "so intolerable" that she was compelled to resign. Accordingly, the Plaintiff has failed to demonstrate that she was constructively discharged and Defendant SCA, Inc.'s Motion to Dismiss on this claim is due to be granted.

ii.     Plaintiff does not assert a claim for race discrimination under Title VII.

Defendant SCA, Inc. also moves to dismiss the Plaintiff's Title VII race discrimination claim. (Doc. 7 at 3). Specifically, Defendant SCA, Inc. contends "Plaintiff captions Count I of her complaint as a Title VII claim for 'national origin discrimination,' but notes that Plaintiff makes reference to being treated differently than 'non-black' employees." (*Id.*). To the extent this language states a Title VII race discrimination claim, Defendant SCA, Inc. seeks to dismiss it because "Plaintiff made absolutely no mention of her race or race discrimination in her Charge of Discrimination with the EEOC," thus failing to exhaust her administrative remedies. (*Id.*)

In response, the Plaintiff clarifies that she does not allege a Title VII race discrimination claim. (Doc. 15 at 10). Rather, she intends the "non-black" language to support her race discrimination claim under 42 U.S.C § 1981. The Court concludes that

the Plaintiff does not allege a Title VII race discrimination claim and accordingly, Defendant SCA, Inc.'s Motion to Dismiss on this claim is due to be denied.

## IV.    CONCLUSION

For the reasons discussed, it is

ORDERED that Defendant Kim's Motion to Dismiss (doc. 10) for insufficient service of process is GRANTED, and this Defendant is dismissed as a party in this action.

It is further

ORDERED that Defendant SCA, Inc.'s Partial Motion to Dismiss (doc. 7) is GRANTED in part and DENIED in part as follows:

1. Defendant SCA, Inc.'s Motion to Dismiss the Plaintiff's constructive discharge claim is GRANTED, and this claim is DISMISSED with prejudice.

2. Defendant SCA, Inc.'s Motion to Dismiss the Plaintiff's Title VII race discrimination claim is DENIED because the Plaintiff concedes she is not asserting a race discrimination claim under Title VII.

Finally, it is

ORDERED that Defendant SCA, Inc.'s Motion in the Alternative for a More Definite Statement is DENIED as moot.

DONE this 18th day of October, 2019.

                            /s/ Emily C. Marks
                            EMILY C. MARKS
                            CHIEF UNITED STATES DISTRICT JUDGE